IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01641-CMA-STV

DOUG BARRY,
MICHAEL KIERNAN,
PAUL MOLER,
NICHOLAS SOOTER,
LINDA SPUEHLER, and
DENNIS MAUSER,

    Plaintiffs,

v.

WEYERHAEUSER COMPANY,

    Defendant.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Entered By Magistrate Judge Scott T. Varholak

    This civil action is before the Court on the Motion of Defendant Weyerhaeuser Company to Dismiss Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) [#22] ("the Motion"). The Motion has been referred to this Court. [#23] This Court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Court respectfully **RECOMMENDS** that the Motion be **DENIED**.

I.   **FACTUAL ALLEGATIONS**[1]

Defendant is one of the world's largest private owners of timberlands. [#19 at ¶ 6] Among the products produced by Defendant are TJI joists used for residential construction. [*Id.* at ¶¶ 7-8] The joists are composed of wood particles and treated with Flak Jacket coating, a proprietary coating designed by Defendant. [*Id.*] The coating is designed to enhance the fire resistance of joists used in construction. [*Id.* at ¶ 8]

In December 2016, Defendant began commercial production of a fourth generation of Flak Jacket known as "Gen 4." [*Id.* at ¶ 9] Gen 4 Flak Jacket contained a formaldehyde-based resin. [*Id.* at ¶ 11] In April 2017, Defendant received notice that homeowners were complaining of an odor in homes in which TJI joists with Gen 4 Flak Jacket were installed. [*Id.* at ¶ 12] Defendant concluded that the odor was related to formaldehyde off-gassing. [*Id.*]

Production of the Gen 4 Flak Jackets continued through June 27, 2017. [*Id.* at ¶ 9] On July 6, 2017, Defendant sent a letter to "Dealers/Distributors/Home Builders" warning them of an odor in homes that was "related to the coating of the TJI's, which does contain formaldehyde." [*Id.* at ¶ 13] One week later, Defendant sent another letter asking dealers to "[p]lease not sell <u>any</u> TJI Joists with Flak Jacket Protection manufactured after December 1, 2016." [*Id.* (emphasis in original)] In that same letter, Defendant wrote that it would be "collecting all existing inventory of TJI Joists with Flak Jacket protection manufactured after Dec[ember] 1, 2016." [*Id.*] Another letter sent that same day warned

---

[1] The facts are drawn from the allegations in Plaintiffs' First Amended Complaint [#19], which must be taken as true when considering a motion to dismiss. *Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)).

builders that "[i]f your contractors need to work in the basements in affected homes, we recommend that you contact our customer care line for guidance." [*Id.*]

On July 18, 2017, Defendant admitted that it "ha[d] determined that recent customer feedback regarding an odor in certain newly constructed homes [wa]s related to a recent formula change to the Flak Jacket coating that included a formaldehyde-based resin." [*Id.* at ¶ 14] Defendant announced that it had stopped all production, sales and shipment of the product. [*Id.*] Defendant advised affected homeowners to vacate their homes until the Flak Jacket could be remediated. [*Id.*] According to the First Amended Complaint, months before ordering cessation of production and distribution of the TJI joists with Gen 4 Flak Jacket protection, test results notified Defendant that these products had been off-gassing formaldehyde at levels known to cause injury and illness. [*Id.* at ¶¶ 16, 17]

The First Amended Complaint alleges that the Occupational Safety and Health Administration ("OSHA") has recognized formaldehyde as a cancer hazard that has been linked to increased risk of cancer of the nose, throat, and sinuses, nasopharyngeal and oropharyngeal cancer, lung cancer, and leukemia. [*Id.* at ¶ 18] Exposure also results in respiratory illnesses. [*Id.*] OSHA formaldehyde standards set a permissible exposure limit at .75 parts per million measured as an eight-hour time weighted average. [*Id.* at ¶ 19] At 2 parts per million, the maximum exposure allowed is 15 minutes. [*Id.*] Levels exceeding 100 parts per million are immediately dangerous to life and health. [*Id.*]

Plaintiffs worked as inspectors, supervisors, and in other construction capacities during the construction and inspection of homes built using TJI joists treated with Gen 4 Flak Jacket. [*Id.* at ¶ 10] In 2017, each of the Plaintiffs worked in and around homes

containing TJI joints treated with Gen 4 Flak Jacket protection. [*Id.*] More specifically, the homes Plaintiffs Doug Barry, Michael Kiernan, Dennis Mauser, Linda Spuehler, and Paul Moler worked in and around were located in the Wyndham Hill subdivision in Weld County, Colorado, and the homes Plaintiff Nicholas Sooter worked in and around were located in the Dove Creek subdivision in Douglas County, Colorado. [*Id.*]

Because of their work, each of the Plaintiffs were exposed to formaldehyde contained in TJI joists with Gen 4 Flak Jacket protection. [*Id.*] Plaintiffs "were unknowingly exposed to dangerous levels of formaldehyde, without adequate protection, for hours a day over the course of months." [*Id.*] Specifically, "Plaintiffs were exposed to levels exceeding 2 parts per million for many hours per day, for months, without any hygiene monitoring or medical surveillance." [*Id.* at ¶ 19] The levels of formaldehyde to which Plaintiffs were exposed "were so excessive that it was virtually impossible for them not to become ill." [*Id.* at ¶ 22] As a result of this exposure, Plaintiffs suffered injuries, "including coughs, shortness of breath, burning eyes, rashes, [] sinus issues, and increased risks of respiratory ailments and cancer." [*Id.* at ¶ 30; *see also id.* at ¶¶ 21, 36]

On June 28, 2018, Plaintiffs filed the instant action. [#1] Plaintiffs' First Amended Complaint brings two causes of action: strict products liability and negligence. [#19 at 7-10] On October 5, 2018, Defendant filed the instant Motion pursuant to Federal Rule of Civil Procedure 12(b)(6), seeking to dismiss the First Amended Complaint for failure to state a claim. [#22] Plaintiffs have responded to the Motion [#24], and Defendant replied [#31].

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (alteration in original) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556). The court's ultimate duty is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## III. ANALYSIS

Defendant challenges the sufficiency of both Plaintiff's strict liability and negligence allegations. The Court analyzes each below.

### A. Strict Liability

Colorado has expressly adopted the doctrine of strict liability in tort, based on the Restatement (Second) of Torts § 402A. *Wollam v. Wright Med. Grp., Inc.,* No. 1:10-cv-3104-DME-BNB, 2012 WL 4510695, at *2 (D. Colo. Sept. 30, 2012) (citing *Union Supply Co. v. Pust,* 583 P.2d 276, 280 (Colo. 1978)). "Applying strict liability to product manufacturing, Colorado recognizes 'three general areas of the manufacturing process that lead to strict liability claims. . . . : (1) [p]hysical flaws due to improper manufacture; (2) inadequacies in [d]esign; and (3) inadequate [w]arnings concerning the hazards or proper methods for safe use.'" *Id.* (quoting *Union Supply Co.,* 583 P.2d at 280 n.1).

To succeed on a strict liability claim for a design defect, a plaintiff must prove the following elements:

> (1) the product is in a defective condition unreasonably dangerous to the user or consumer; (2) the product is expected to and does reach the consumer without substantial change in the condition in which it is sold; (3) the design defect caused the plaintiff's injury; (4) the defendant sold the product and is engaged in the business of selling products; and (5) the plaintiff sustained damages.

*Id.* at *2 n.2 (quoting *Barton v. Adams Rental, Inc.,* 938 P.2d 532, 536-37 (Colo. 1997)); *see also Helmer v. Goodyear Tire & Rubber Co.,* No. 12-cv-00685-RBJ-MEH, 2014 WL 1133299, at *2 (D. Colo. Mar. 21, 2014)(same).

Similarly, to succeed on a strict liability claim premised on a manufacturing defect, a plaintiff must prove:

6

> [1] the defendant manufactured the product, engaged in the business of selling the product, and sold the product; [2] the product was defective and, because of the defect, was unreasonably dangerous to a person who might reasonably be expected to use it; [3] the product was defective at the time the manufacturer sold it; [4] the product was expected to, and did, reach the user without substantial change; [5] plaintiff was a person reasonably expected to use the product, was injured, and the product's defect caused plaintiff's injuries.

*Wollam*, 2012 WL 4510695, at *2 n.2 (citing *Price v. Wilson Sporting Goods Co.,* No. 03CV02639WYDOE, 2005 WL 1677512, at *3 (D. Colo. July 18, 2005)).

Under a failure to warn theory, the plaintiff must prove that the product was defective and the "defendant failed to warn of particular risks that were known or knowable in light of the generally recognized and prevailing scientific and technical knowledge available at the time of manufacture and distribution." *Koch v. Kaz USA, Inc.*, No. 09-cv-02976-LTB-BNB, 2011 WL 2601791, at *3 (D. Colo. July 1, 2011) (quoting *Fibreboard Corp. v. Fenton*, 845 P.2d 1168, 1175 (Colo. 1993)). In addition, the plaintiff must establish injury and causation. *Oja v. Howmedica, Inc.*, 111 F.3d 782, 791 (10th Cir. 1997).

Here, Defendant argues that Plaintiffs have failed to plausibly allege that: (1) they sustained any damages, and (2) that the product caused any damages they did sustain. [#22 at 10-12] The Court disagrees. The First Amended Complaint alleges that Plaintiffs suffered injuries "including coughs, shortness of breath, burning eyes, rashes, [] sinus issues, and increased risks of respiratory ailments and cancer." [#19 at ¶ 30; *see also id.* at ¶ 21] Plaintiffs have thus alleged that they suffered damages through a wide-range of ailments.[2]

---

[2] Although Defendant may be correct that it is unlikely that each Plaintiff suffered each of these ailments [#31 at 4], Defendant does not identify any authority requiring plaintiffs in a multi-plaintiff case to specifically identify each injury suffered by each plaintiff in order

7

Plaintiffs have likewise plausibly alleged that their ailments were the result of the defective TJI joists with Gen 4 Flak Jacket protection. Plaintiffs have alleged that the defective TJI joists off-gassed formaldehyde, and that Plaintiffs were exposed to formaldehyde levels exceeding 2 parts per million for many hours per day, for months. [#19 at ¶¶ 19, 21] Plaintiffs have alleged that OSHA regulations limit exposure at such levels to fifteen minutes. [*Id.* at ¶ 19] Plaintiffs allege that formaldehyde is a cancer hazard and exposure has been linked to respiratory illnesses, including those allegedly suffered by Plaintiffs. [*Id.* at ¶ 18] Finally, Plaintiffs allege that Defendant itself recognized the dangers from the defective TJI joists [*id.* at ¶ 17], and even instructed homeowners to vacate homes with the defective joists [*id.* at ¶ 14]. Such allegations plausibly allege that Plaintiffs' ailments were caused by the defective TJI joists.[3] *See Cole v. NIBCO, Inc.*, No. CV13-7871(FLW)(TJB), 2016 WL 10536025, at *12 (D.N.J. Feb. 26, 2016) (finding that plaintiffs sufficiently alleged causation where they alleged that product defect had affected consumers across the United States, that defect created water damage to the homes of those consumers, and that plaintiffs suffered property damage "[a]s a direct and

---

to plausibly plead their claims. *See Brown v. Panhandle E. Pipeline Co.*, No. 16-2428-JAR-TJJ, 2017 WL 3821743, at *1 (D. Kan. Sept. 1, 2017) (collecting cases for proposition that "[i]temization of damages is not required to meet the pleading requirements of Rule 8(a)").

[3] The single case relied upon by Defendant to support its causation argument is readily distinguished. [See #22 at 7 (citing *Dittman v. DJO, LLC*, No. 08-CV-02791-WDM-KLM, 2009 WL 3246128, at *3 (D. Colo. Oct. 5, 2009)); #31 at 6 (also citing *Dittman*)] In *Dittman*, after finding the plaintiff's product defect and failure to warn claims barred by the statute of limitations, the court, as an alternative basis for dismissal, found that the plaintiff's allegations of causation were insufficient. 2009 WL 3246128, at *3. The plaintiff in *Dittman*, however, "d[id] not identify which specific medication was allegedly used during his procedure or directly allege that any of [the] defendants were the actual manufacturer of the drug that caused his injury." *Id.* at *1. By contrast, Plaintiffs here have identified the specific product manufactured by Defendant that they expressly allege caused their injuries.

proximate result of the defective condition"); *Majur v. Milo's Kitchen, LLC*, No. Civ. 12-1011, 2013 WL 3245203, at * 5 (W.D. Pa. June 25, 2013) (finding that plaintiff sufficiently alleged causation where she alleged her dog became sick after eating dog treats during the month, the Food and Drug Administration issued warnings about consuming dog treats manufactured in country where her dog's treats were manufactured, and defendant had received prior complaints about the dog treats).

Accordingly, the Court **RECOMMENDS** that Defendant's Motion to Dismiss Plaintiffs' strict products liability claim be **DENIED**.[4]

---

[4] Defendant also argues, generally, that Plaintiffs' allegations are too conclusory to plausibly plead their claims. [#22 at 6-9] Defendant argues that Plaintiffs fail to identify their specific vocation or how their role in the construction and inspection process put them in contact with the defective joists. [*Id.* at 7-9] Defendant also faults the First Amended Complaint for failing to identify each specific home in which Plaintiffs encountered the defective joists. [*Id.*] The Court is not persuaded by these arguments for which Defendant fails to cite to any specific authority. Plaintiffs have identified the neighborhoods where they encountered the defective joists and stated that they came into contact with the joists in the construction and inspection process. Plaintiffs need not allege every factual detail to plausibly plead their claims, and the First Amended Complaint goes far beyond the threadbare accusations or labels and conclusions at issue in *Iqbal* and *Twombly*. *Duensing v. Gilbert*, No. 2:11-CV-01747-GMN-VCF, 2013 WL 1316890, at *6 (D. Nev. Mar. 1, 2013) ("The complaint sufficiently puts the defendant on notice and the specific fact of which model of Taser product is not necessary. The actual model used in the alleged incident is a fact that can be established through discovery. As TASER is on notice, the claim survives regardless of [whether the complaint] specified the actual model of Taser allegedly used."), *report and recommendation adopted*, 2013 WL 1316763 (D. Nev. Mar. 28, 2013); *Thomas v. Stryker Corp.*, No. CV 4:15-04968-BHH, 2016 WL 1600122, at *2 (D.S.C. Apr. 20, 2016) ("Plaintiff's strict liability claim alleges, *inter alia*, that 'Defendant's product was in a defective condition, and/or unreasonably dangerous at the time it was inserted into Plaintiff's body' and that as a result, 'Plaintiff suffered and continues to suffer actual damages.' . . . These allegations advance a plausible basis for relief. As Plaintiff notes in her response, she will have the opportunity to establish further facts through discovery."); *Staples v. Wright Med. Tech.*, No. SACV 11-00977-CJC(RNBx), 2011 WL 13228030, at *2 (C.D. Cal. Dec. 29, 2011) ("Although [plaintiff's] claims are brief, the facts alleged, if true, are sufficient to give rise to plausible claims for relief, and are not mere recitations of the elements of each cause of action. Indeed, [plaintiff] identifies the nature of the product, the part numbers of the product, precisely when and how [defendant's] product failed, and the specific injuries he suffered as a result of that failure."); *Baker v. APP Pharm., LLC*, No. CIV 09-05725 (JAP), 2010

9

### B. Negligence

"To recover on a claim of negligence, the plaintiff must establish the existence of a legal duty on the part of the defendant, breach of that duty by the defendant, causation, and damages." *Davenport v. Cmty. Corr. of Pikes Peak Region, Inc.*, 962 P.2d 963, 966 (Colo. 1998). With respect to Plaintiffs' negligence claim, Defendant simply repeats its argument that Plaintiffs have failed to adequately plead damages or causation. [#22 at 12] For the reasons outlined above, the Court disagrees. Accordingly, the Court **RECOMMENDS** that Defendant's Motion to Dismiss Plaintiffs' negligence claim be **DENIED**.

### IV. CONCLUSION

For the foregoing reasons, this Court respectfully **RECOMMENDS** that Defendant's Motion to Dismiss [#22] be **DENIED**.[5]

---

WL 4941454, at *3 (D.N.J. Nov. 30, 2010) ("Plaintiffs have alleged that all of the Defendants manufacture heparin products, that all of those heparin products were administered to [plaintiff] and that all of those administrations of heparin caused [plaintiff's] injury. The Court finds that these factual allegations are 'more than labels and conclusions' and, instead, when accepted as true, are sufficient to state a claim that is plausible on its face.").

[5] Within fourteen days after service of a copy of this Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Griego v. Padilla (In re Griego)*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review." *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the Magistrate Judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (holding that the district court's decision to review Magistrate Judge's recommendation *de novo* despite lack of an objection does not preclude application of "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d

DATED: December 14, 2018                    BY THE COURT:

                                            s/Scott T. Varholak
                                            United States Magistrate Judge

---

901, 904 (10th Cir. 1995) (finding that cross-claimant waived right to appeal certain portions of Magistrate Judge's order by failing to object to those portions); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to appeal the Magistrate Judge's ruling by failing to file objections). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (holding that firm waiver rule does not apply when the interests of justice require review).