IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.1:18-cv-01641 –CMA-DDD

DOUG BARRY,
MICHAEL KIERNAN,
PAUL MOLER,
NICHOLAS SOOTER,
LINDA SPUEHLER, and
DENNIS MAUSER

    Plaintiffs,

v.

WEYERHAEUSER COMPANY,
a Washington Corporation

    Defendant.

**PLAINTIFFS' REPLY TO WEYERHAEUSER COMPANY'S AMENDED OPPOSITION TO PLAINTIFF'S MOTION FOR CONTEMPT AND MOTION FOR SANCTIONS (DOC. 84-2)**

Plaintiffs file this Reply to Weyerhaeuser Company's Opposition to Plaintiffs' Motion for Contempt and for Sanctions (Doc. 84-2) and show as follows:

**SUMMARY OF THE REPLY**

Two weeks have passed since the Court's July 8th deadline to produce deposition transcripts and Weyerhaeuser still refuses to comply with this Court's order.

First, Weyerhaeuser grossly mischaracterized its actions and those of other attorneys to conceal the fact it made no effort to comply with the Court's June 17th order until *after* the production deadline had passed and *after* Plaintiffs filed their Motion for Contempt. Doc. 80. Weyerhaeuser's representation that it sought the consent of parties to protective orders since June

1

17th is inaccurate. Weyerhaeuser waited until the evening of July 10th, two days after the production deadline and after Plaintiffs filed their Motion for Contempt, to contact other parties and seek their consent to release depositions. Nor is Weyerhaeuser's failure to comply with the Court's order due to the inaction of other counsel, as it implies. Counsel in the *Chi* case consented to release depositions within seven hours of being contacted by Weyerhaeuser on the night of July 10th. Counsel in the *Dream Finders* case consented on July 15th, a fact Weyerhaeuser continues to conceal from Plaintiffs' counsel and the Court.

Second, Weyerhaeuser continues to conceal the existence of responsive depositions. Mark Nelson, attorney for Plaintiffs in the *Chi* and *Gilchrist* matters, consented to the release of nine depositions but Weyerhaeuser has only disclosed six of those depositions to Plaintiffs. Weyerhaeuser did not disclose the existence of three expert depositions, including the deposition of Paul Nony, Weyerhaeuser's expert toxicologist. And, despite receiving consent from counsel in the *Dream Finders* case to release ten depositions on July 15th, Weyerhaeuser has not disclosed the existence of those depositions to Plaintiffs. In filings of July 18th and 19th, Weyerhaeuser told this Court that consent had not been received and it would inform Plaintiffs' counsel when it was. Plaintiffs only learned of these depositions through their own investigation.

Third, Weyerhaeuser's conduct in other cases shows its claim that Plaintiffs must purchase certified deposition transcripts from the court reporter is an attempt to harass Plaintiffs and impose unnecessary expense and burden. Not only did Weyerhaeuser previously produce one deposition in this case without any such requirement, it has not asked opposing counsel to purchase certified copies of depositions in other cases where it was ordered to produce depositions. In those cases, it simply forwarded electronic copies of the depositions in its possession.

Finally, Weyerhaeuser's argument that it cannot produce depositions without consent of other parties to protective orders and stipulations of Plaintiffs' counsel is another delay tactic. Weyerhaeuser does not need the consent of parties to protective orders in other cases to produce deposition transcripts. Those protective orders contain provisions allowing disclosure of confidential material when ordered by another court.

Weyerhaeuser's conduct has resulted in cancelled depositions, delayed discovery, and impeded Plaintiffs' ability to adequately prepare their case. Its conduct and misrepresentations are worthy of sanctions.

## ARGUMENT

**1.  Weyerhaeuser grossly mischaracterizes its conduct, and the conduct of other parties, to conceal its violation of the Court's order.**

Weyerhaeuser's bad faith and deception are best illustrated by the following passage from its response, where Weyerhaeuser attempts to convince the Court it has diligently sought to abide by its order and that its shortcomings are the fault of third parties. Weyerhaeuser stated:

> Since the June 17 discovery hearing, Weyerhaeuser has sought to obtain written approval from opposing counsel in the other unrelated matters. Weyerhaeuser could not control when opposing counsel would provide their approval, if at all, but Weyerhaeuser did keep Plaintiffs' counsel informed as to the status of any written consent it received in this regard. Finally, on July 11, 2019, consent was received for two of the three cases for which depositions had been sought. Doc. 84-2, p. 5.

What Weyerhaeuser omitted is that it made no effort to obtain the written consent of counsel prior to the Court-ordered deadline of July 8th. Weyerhaeuser waited until 11:20 and 11:22 p.m. on July 10th, *after Plaintiffs filed their Motion for Contempt*, to contact parties to the protective orders for the first time regarding release of depositions in this case. Ex. 2, Declaration of Mark Nelson; Ex. C to Ex. 1, Declaration of Ryan Hicks.

Those facts also disprove Weyerhaeuser's claim to have kept "Plaintiffs' counsel informed as to the status of any written consent." Weyerhaeuser could not have kept Plaintiffs' counsel

3

apprised of its progress when it made no effort to obtain consent until after the Motion for Contempt was filed. Doc. 80. On the afternoon of July 10th, while Plaintiffs' counsel was filing its motion, Weyerhaeuser emailed Plaintiffs' counsel that "we are working to secure written consent of opposing counsel…for release of the deposition transcripts to you." Ex. 1-B. The facts, however, show Weyerhaeuser had made no effort to obtain consent from opposing counsel by that point in time and would not do so until later that night after Plaintiffs' motion was filed.

And while Weyerhaeuser's misrepresentations to the Court and counsel are worthy of sanction, its willingness to characterize other counsels' inertia as responsible for its failure to abide by the Court's order is especially reprehensible.  Weyerhaeuser implies that the reason it could not produce documents by July 8th resulted from other counsel's failure to cooperate, stating, "Since the June 17 discovery hearing, Weyerhaeuser has sought to obtain written approval from opposing counsel in the other unrelated matters.  Weyerhaeuser could not control when other counsel would provide their approval…Finally, on July 11, 2019, consent was received for two of the three cases for which depositions had been sought."  Doc. 84-2, p. 5.  Weyerhaeuser did not to tell the Court that it asked for consent from Mark Nelson for the first time at 11:20 p.m. on July 10th, and that Mr. Nelson provided his written consent at 6:06 a.m. on July 11th.  Ex. 2.  It did not take Weyerhaeuser twenty-four days to get Mr. Nelson's consent, as it would have the Court believe, it took less than seven hours.

Weyerhaeuser has also represented to this Court, in two filings on July 17th & 18th, that counsel in the *Dream Finders* case has not given its consent to release depositions, claiming, "As to written consent in the one remaining case at issue [*Dream Finders*], Weyerhaeuser is still awaiting written consent from opposing counsel to release the subject transcripts.  As soon as written consent is received in that case, Weyerhaeuser will authorize the release of the deposition

4

transcripts to Plaintiffs' counsel." Doc. 83, p. 3; Doc. 84-2, p. 3. In fact, counsel for *Dream Finders* was contacted for the first time at 11:22 p.m. on July 10th and provided consent to release deposition transcripts on Monday, July 15th. Ex. 1-C, D. Weyerhaeuser was not awaiting consent from *Dream Finders* counsel at the time it filed its response, as it told the court, and, a week after receiving that consent, has still not informed Plaintiffs that consent was received or which deposition transcripts are in its possession.

Weyerhaeuser made no effort to comply with this Court's July 8th deadline. It waited until the afternoon of July 8th to send copies of protective orders and proposed stipulations to Plaintiffs' counsel. Ex. 1-A.[1] It made no effort to seek consent of other parties to the protective orders until after Plaintiffs filed their motion on July 10th. It represented that its delay was due to the inaction of other counsel, which it was not, and it continues to withhold responsive documents, as discussed below. Each of these actions is part of Weyerhaeuser's attempt to delay and obstruct discovery at every possible turn.

**2. Even with consent of other parties, Weyerhaeuser is still not complying with the Court's order.**

As of the date of this filing, Weyerhaeuser has only disclosed the existence of six depositions and three protective orders from three cases, despite making the following representation to the Court on June 17th:

> There are something on the order of 25 separate cases. There are 6,000 Weyerhaeuser employees and there are many depositions. We have not scoped, or I have not personally scoped exactly how many deposition could be within this, but if it's all depositions involving all cases that Weyerhaeuser has been or will be involved with, it is a massive burden…dealt with both on a massive level of all the depositions and then on the issue of compliance with protective orders. Ex. 1-E, 8:6-16.

---

[1] As discussed below, those stipulations are unnecessary considering the protective orders' exception for production of confidential documents when ordered by another court.

5

Weyerhaeuser unilaterally decided that it will produce depositions from only three cases, citing its disclosure to Plaintiffs of transcripts from "two of the three cases for which [Plaintiff] has requested production." Doc. 84-2, p. 5. Plaintiffs did not request, and the Court did not order, production from only three cases. The Court ordered production of depositions in any Flak Jacket Gen 4 case. Doc. 78. Based on Weyerhaeuser's representations to the Court, there should more than six depositions from three cases.

Weyerhaeuser has concealed the existence of responsive depositions. Plaintiffs' counsel in the *Chi/Gilchrist* cases consented to disclosure of nine depositions, but Weyerhaeuser has only disclosed six of those depositions to Plaintiffs. Ex. 2; Ex. 1-F.[2] In its correspondence to Plaintiffs' counsel listing depositions in the *Chi/Gilchrist* case, Weyerhaeuser omitted depositions of three experts including Paul Nony, a toxicologist retained by Weyerhaeuser. Weyerhaeuser unilaterally decided to conceal the existence of these depositions despite the Court's explicit recognition that the depositions to be produced include "the depositions of employees and/or experts who have testified about the issues raised in this case involving formaldehyde off gassing from Gen 4 joists." *Id.;* Ex. 1-E, 18:8-10.

And Weyerhaeuser has still not disclosed the existence of ten depositions taken in the *Dream Finders* case, despite receiving consent to release those depositions July 15th. Five of those depositions are of the same individuals deposed in the *Chi/Gilchrist* matters. Ex. 1-C, F. Weyerhaeuser's decision to disclose only one deposition per witness defies the ruling of the Court, which held:

> I further find that the request to limit it to one deposition per employee is likewise not persuasive. That essentially creates an incentive on defendants to produce the deposition that provided the least amount of information or was the most ineffective

---

[2] Weyerhaeuser sought Mr. Nelson's consent to release eight depositions. It excluded Jack Winterowd from the list provided to Mr. Nelson but included him in the list sent to counsel in this case, hence the discrepancy between eight or nine depositions.

> of the depositions that were taken, which undercuts the idea of relevancy. It essentially encourages the defendant to find the least relevant deposition and turn that one over. Ex. 1-E, 19:7-14.

In contravention of the Court's order, Weyerhaeuser has forced Plaintiffs to learn of the existence thirteen depositions through Plaintiffs' own investigation. If Plaintiffs were forced to rely only on the responses and representations of Weyerhaeuser, those depositions would never see the light of day.

**3. Weyerhaeuser's attempt to impose unnecessary costs on Plaintiffs is not supported by the Court's order, jurisprudence, or its own past conduct.**

Plaintiffs informed Weyerhaeuser that they would be satisfied with copies of condensed depositions in a pdf format and that Weyerhaeuser could email them to counsel. Ex. 1-A. Rather than simply produce the depositions in its possession, Weyerhaeuser told Plaintiffs' counsel they must purchase certified copies from the court reporter. *Id*. This requirement is not contained in the Court's order, nor has Weyerhaeuser cited any case or rule in support of this requirement. Doc. 78.

Weyerhaeuser argues it is not fair for Weyerhaeuser to bear the cost of purchasing depositions to comply with the Court's order, but that argument falls flat. Weyerhaeuser has been ordered to produce copies of depositions in its possession and it could have done so on July 8th by simply emailing pdf copies of depositions to Plaintiffs. There is no need for Weyerhaeuser to purchase additional copies to comply with the Court's order.

Weyerhaeuser's only motive for refusing to produce copies of depositions and requiring Plaintiffs to purchase transcripts from the court reporter is to delay, harass, and impose unnecessary expense and burden. Weyerhaeuser produced depositions from other cases in the

*Dream Finder* case by emailing pdf copies to plaintiffs' counsel, with no argument that Plaintiff must purchase transcripts from a court reporter. Ex. 1.[3]

**4. Weyerhaeuser's claim that it needs consent of opposing counsel in other cases, and stipulations from Plaintiffs' counsel, to produce transcripts is itself another delay tactic.**

The three protective orders cited by Weyerhaeuser each contain a clause allowing the disclosure of confidential documents if ordered by a Court in another proceeding. The clause states:

> **XVII. OTHER PROCEEDINGS**
> A. By entering this Order and limiting the disclosure of information in this Litigation, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this Order who becomes subject to a motion to disclose another party's information designated Confidential Information or Highly Confidential - Attorney Eyes Only Information pursuant to this Order shall promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.[4]

This Court recognized the importance of such a clause during the June 17 hearing, stating:

> Now, with respect to the other protective orders, I am ordering that these documents be produced. To the extent that the other protective orders have an exception in them that says that they can be produced pursuant to Court order, that exception would appear to apply and they can be simply produced. Ex. 1-E, 19:25-20:6.

Rather than simply produce the transcripts, Weyerhaeuser waited until the afternoon of July 8th to send copies of protective orders to Plaintiffs' counsel, along with proposed stipulations to those protective orders, for the first time. Ex. 1-A. Waiting until the afternoon of the production

---

[3] Weyerhaeuser's Seattle counsel emailed a pdf of the *Chi/Gilchrist* deposition of Frank Cereghini without any restriction prior to Mr. Cereghini's deposition on June 25th. Denver counsel has no explanation why Perkins Coie's Seattle office will produce copies of the depositions in its possession in compliance with this Court's order, but the Denver office will not.

[4] *See* Docs. 84-5,6,7. Weyerhaeuser had an obligation to inform counsel from the *Chi/Gilchrist/Dream Finder* cases of the June 17th hearing so that they could appear and object if necessary. They did not appear or object and Weyerhaeuser is free to produce deposition transcripts under the order of this court and without the need for stipulations of Plaintiffs' counsel to other protective orders or the consent of other parties.

8

deadline to raise the issue with Plaintiffs' counsel once again illustrates Weyerhaeuser's efforts to delay. Plaintiffs signed and immediately returned the stipulations in order to avoid further delay but depositions were not produced. Ex. 1-A. As discussed above, Weyerhaeuser did not even contact parties to the protective orders until after Plaintiffs filed their motion for contempt. Had Plaintiffs not filed their motion, Weyerhaeuser would likely have delayed longer.

## CONCLUSION

Since Plaintiffs' filed their motion, Weyerhaeuser continues to refuse to abide by the order of this Court and produce depositions. As a result, Plaintiffs cancelled the deposition of Weyerhaeuser's chief chemist, Jack Winterowd, who has been deposed in at least two other cases. Scheduling of other Weyerhaeuser employees has been delayed until this matter is resolved. The delay in production of deposition transcripts, depositions, and other discovery, has hindered Plaintiffs ability to prepare their case.

As a result of Weyerhaeuser's tactics, scheduling remaining depositions in Seattle before the September 15 discovery deadline in this case will be difficult if not impossible (each deposition requires two days for Plaintiffs' counsel to travel to and from Houston and one day for the deposition). Plaintiffs ask that remaining depositions take place in Houston. Plaintiffs further seek recovery of costs associated with filing this motion and reply, and urge the Court to hold Weyerhaeuser in contempt until it fully complies with the Court's June 17th order.

SCHNEIDER WALLACE
COTTRELL KONECKY WOTKYNS, LLP

By:  /s/ Ryan R. C. Hicks

>Ryan R. C. Hicks
>Email: rhicks@schneiderwallace.com
>3700 Buffalo Speedway, Suite 300
>Houston, Texas 77098
>Telephone: (713) 338-2560
>Facsimile: (866) 505-8036
>Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I certify that this response was served on all counsel of record through the ECF system on July 22, 2019.

>/s/ Ryan R. C. Hicks