1

```
 1            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLORADO
 2
     Case No. 18-cv-01641-DDD-STV
 3   _____

 4   DOUG BARRY, et al.,

 5        Plaintiffs,

 6   vs.

 7   WEYERHAEUSER COMPANY,

 8        Defendant.

 9   _____

10            Proceedings before SCOTT T. VARHOLAK, United States

11   Magistrate Judge, United States District Court for the

12   District of Colorado, commencing at 9:21 a.m., June 17, 2019,

13   in the United States Courthouse, Denver, Colorado.

14   _____

15            WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

16   ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

17   _____

18                      APPEARANCES

19            RYAN HICKS, Attorney at Law, appearing for the

20   Plaintiffs.

21            CHRISTOPHER SUTTON, Attorney at Law, appearing

22   for the Defendant.

23   _____

24                   · DISCOVERY HEARING

25
```



2

```
1                    P R O C E E D I N G S
2                (Whereupon, the within electronically recorded
3    proceedings are herein transcribed, pursuant to order of
4    counsel.)
5                THE COURT:  This is 18-cv-1641.  Can I have entries
6    of appearance, please.
7                MR. HICKS:  Sure.  Ryan Hicks for the plaintiffs.
8                THE COURT:  Good morning.
9                MR. SUTTON:  Good morning, Christopher Sutton for
10   defendant.
11               THE COURT:  Good morning.  So I received the joint
12   discovery statements as well as the e-mails about it.  This
13   was set initially -- so the parties know, I'm on criminal
14   duty this week and I normally don't set any civil during
15   criminal duty because of the fact that we just randomly get
16   notice that there is various appearances and other things
17   that show up.
18               I set this because it was my understanding that it
19   was limited to one issue, which was whether or not the
20   transcripts of certain employees and experts should be
21   produced.  In the joint statement that was initially set,
22   there is about ten different items that are listed.  I am not
23   going to be able to take up ten different items today.  I
24   have a number of criminal defendants coming in at 10 o'clock
25   today and to go through ten items is going to take
```

3

1    substantial time.  And in reviewing it, it does not appear

2    that the parties have really conferred over those issues and

3    you all may be able to reach resolution.

4           So the only issue I'm going to take up today is the

5    deposition issue.  The remaining issues I want the parties to

6    confer over.  If you cannot reach agreement after conferral,

7    then you can contact my Chambers and I'll set up another

8    hearing on that.

9           So that then brings us to the deposition issue.

10   It's my understanding that the primary objection to this is

11   relevance.  Let me tell the parties my initial take on this.

12   One, I think that the depositions clearly have a potential

13   for relevancy.  If you have employees and experts who have

14   testified as to the product and whether or not the product

15   can cause illness or other aspects of the product, I think

16   that's clearly relevant to the claims that are at issue in

17   this case.

18          The only question then that I have to balance is

19   whether the -- any burden of producing these overcomes any

20   relevance under Rule 1, and I've yet to hear in the

21   statements any real concrete analysis of the burden that

22   producing these depositions would cause.  So I'm happy to

23   hear that.

24          The other issue that I have is whether or not these

25   can be produced based on the protective orders issued in the

4

```
 1    other cases.  And I don't know the answer to that because I

 2    don't have those protective orders.  I obviously cannot order

 3    defendants to produce something that they are prohibited from

 4    producing based upon a protective order that was entered in

 5    another case, but I don't know how -- I don't know what

 6    exactly was issued in those and I don't know whether or not

 7    there is some provision of those orders that would allow it

 8    to be produced provided that plaintiffs' counsel signs off on

 9    the protective order or provided that certain aspects are

10    redacted.  I just don't know the answer to that.

11            So since it's defendant's objection to the

12    materials, why don't I hear from defendant first.

13            MR. SUTTON:  Sure.  Thank you, Your Honor.  Should

14    I go to the podium?

15            THE COURT:  Sure.

16            MR. SUTTON:  Thank you.  Good morning and we'll be

17    as efficient as possible, sir.

18            THE COURT:  Okay.

19            MR. SUTTON:  The -- if I may take up the issue,

20    just a couple of comments on the issue of relevance.

21            THE COURT:  Sure.

22            MR. SUTTON:  And then address the burden issue.  On

23    the issue of relevance, I think one of the key elements that

24    hasn't come out maybe fully in the discussions on the issue

25    of relevance is the nature of the plaintiffs in this case
```

1    relative to the plaintiffs in those other cases.

2            These are worker cases.  These are workplace

3    exposure cases.  Workplace exposure is governed by the

4    federal law under the -- what's called the Occupational

5    Safety and Health Act.  It has been in place for 50 years.

6    Those workplace exposures to formaldehyde are very

7    specifically regulated by federal law by the Occupational

8    Safety and Health Administration.

9            These criterion are applicable here.  None of those

10   other cases have those same elements.  There is no workers

11   involved in those cases.  Those are homeowners, those are

12   contract cases involving, you know, purchase and sale of

13   goods.

14           THE COURT:  But if they testified to -- there is a

15   lot that these employees or experts could have testified to.

16   For example, they could have testified to the amount of

17   offgassing that occurred.  That is as relevant to the

18   homeowner as it is to the employee, because you may be

19   arguing that the offgassing involved here falls under the

20   amount that OSHA deems harmful, but you may have had an

21   employee who testified otherwise, who testified that indeed

22   there was higher offgassing.  I don't know because I don't

23   know what's in those depositions.  Plaintiff doesn't know

24   because plaintiff doesn't know what's in those depositions.

25           So while I agree that being exposed to a level of

6

1    offgassing over a nine-month period and your constant

2    exposure as you may have for a homeowner is different than an

3    employee who may be exposed over a three-month period on an

4    interval basis, there is still aspects of that deposition

5    that are going to be relevant to both, at least arguably.

6           And again, what I need to determine in this case is

7    whether it should be produced as part of the discovery.  I'm

8    not ruling on whether or not it's ultimately admissible.

9    That's something for Judge Domenico to eventually take up.

10          What I have to determine is whether or not there is

11   relevance to this and whether that relevance is overcome by

12   any burden that's involved.  And I think -- based upon the

13   fact that these individuals are going to have some testimony

14   about offgassing and potentially dangers of offgassing, I

15   think it is relevant.

16          MR. SUTTON:  In that regard, Your Honor, what we

17   had proposed to plaintiff's counsel is that in cases where

18   there are discussions that have -- transcripts that have

19   discussions relevant to these matters -- in other words,

20   workplace exposures, relevant to workplace exposures there

21   are discussions about the application of the standard, the

22   implication of that standard with respect to those exposures,

23   we are willing to produce those in certain circumstances

24   where we have permission consent to do so, can meet the

25   protective order provisions, et cetera.

1            THE COURT:  And would that include if there is

2      testimony about any offgassing and the amount of offgassing

3      from the -- the Gen 4.

4            MR. SUTTON:  Yes, it would because that's the only

5      mechanism for the release of formaldehyde from these products

6      is offgassing from the Flak Jacket truss joist into the

7      atmosphere, typically in the basement, that causes

8      essentially the exposure that's complained of here.

9            THE COURT:  It seems to me that it is much more

10     work on your behalf to go through each of these depositions

11     and determine does this go to this issue or does this not go

12     to this issue than to simply produce all of the depositions

13     and then argue relevancy down the road.  I mean, it strikes

14     me as you're trying to shield aspects of this because maybe

15     it's harmful to your case.  It may be irrelevant in the end

16     and Judge Domenico may say these shouldn't be produced, but

17     again what I'm -- what my job at this stage is to balance

18     relevancy versus, you know, the cost and the difficulty.

19           It seems much more costly to your client to have

20     you go through -- I don't know how many depositions we have,

21     let's say 25 depositions, and parse out this section goes to

22     the claims of this, this section does not, this section goes

23     to the claims, rather than just produce all of the

24     depositions.  What's the harm in just producing them?

25           MR. SUTTON:  Your Honor, due to the protective

8

1   orders, we have to do that anyway.  We have to go through the

2   individual depositions to make sure that we're not in breach

3   of provisions within the protective orders, personal

4   information, you know, addresses, medical information.  We're

5   going to have to go through those depositions anyway.

6           The -- there are something on the order of 25

7   separate cases.  There are 6,000 Weyerhauser employees and

8   there are many depositions.  We have not scoped, or I have

9   personally scoped exactly how many depositions could be

10  within this, but if it's all depositions involving all cases

11  that Weyerhaeuser has been or will be involved with, it is a

12  massive burden.  And so to some extent, we have a winnowing

13  process that we will have to go through regardless and it

14  will both have to be, you know, dealt with both on a massive

15  level of all the depositions and then on the issue of

16  compliance of the protective orders.

17          THE COURT:  And I get that, but what I'm saying is,

18  I don't know how many -- let's say 50 depositions are out

19  there, okay, and what you're indicating is you're willing to

20  go through those 50 depositions and produce subject to taking

21  some things out based on the protective order.

22          MR. SUTTON:  Redacting -- I'm sorry.

23          THE COURT:  Go through each of those, redact them

24  in order to stay compliant with the protective order, but

25  then you also want to put the additional burden on yourself

9

1    of going through and making a judgment call of relevancy

2    versus irrelevancy.

3          And what I'm saying is that second judgment calls

4    seems to be putting an additional burden on you that it seems

5    to create an additional cost as opposed to being a

6    cost-saving measure, because you're not only having to go

7    through and do the first redaction, which you're saying

8    you're willing to do, you have to make a second decision,

9    which is a judgment call of, is this relevant or is this

10   irrelevant.  And I'm not seeing how that is cost saving in

11   any way because, again, what I have to address is the burden

12   on you to produce this.

13         It seems to me that that is making it more

14   burdensome for you, and I'm not getting any benefit out of

15   that other than your keeping some material to plaintiff and

16   the only -- the only explanation I could see for that is you

17   think that that information that you're keeping from

18   plaintiff may be harmful to you.

19         And so again, I'm not making the call as to whether

20   it's relevant or not.  Ultimately that's -- Judge Domenico is

21   going to have to go through and say, is this testimony about

22   the exposure that this may cause to a homeowner sufficiently

23   reliable or sufficiently relevant versus a prejudice analysis

24   and a 401 analysis down the road to allow it in at trial in a

25   case involving workers who have a much lower exposure.

 1   That's a very different issue.  That's a 401 analysis that

 2   Judge Domenico is going to need to take up.  That's not the

 3   only analysis before me.

 4        The only analysis before me is, is this potentially

 5   relevant, and I think that it is, versus what is the burden

 6   of producing it.  And the only burden you're explaining to me

 7   is something that's going to put an additional burden upon

 8   you to redact as opposed to just simply produce.

 9        MR. SUTTON:  And with respect to -- and I don't

10   disagree with your analysis, sir.

11        THE COURT:  Okay.

12        MR. SUTTON:  One of the issues that we're trying to

13   narrow is we were talking about Gen 4 Flak Jacket here and

14   we're talking about -- you know, there are many cases that

15   involve Gen 4 or Gen 4 Flak Jacket and there are many that do

16   not.  And so in the first instance, as I understand, you

17   know, what the direction is right now, is that if the case

18   doesn't involve Gen 4 Flak Jacket, we're not talking about

19   depositions from unrelated matters.

20        THE COURT:  Okay, that's a different argument,

21   okay.

22        MR. SUTTON:  Okay.

23        THE COURT:  I'll hear from plaintiff on that

24   argument.

25        MR. SUTTON:  And then the second issue before, just

```
 1   so we clarify --

 2            THE COURT:  Sure.

 3            MR. SUTTON:  -- and then that will be the last

 4   issue was redundancy.  If there is five depositions from the

 5   same individual and we need to go -- to pursue releases from

 6   five different parties for protective orders, again, it's an

 7   increased burden to us.  What we would ask is that, you know,

 8   one deposition from the individual, to the extent it's

 9   reasonably incomprehensive, you know, we would -- we would at

10   least ask that, you know, we're not having to produce

11   multiple depositions from the same individual multiple times

12   and have to go seek essentially consent from the parties in

13   each instance.

14            THE COURT:  Okay.

15            MR. SUTTON:  Those are the two issues, Your Honor.

16            THE COURT:  Okay.

17            MR. SUTTON:  Thank you.

18            MR. HICKS:  Thank you, Your Honor.  I have the

19   actual request here in a book.  If I may approach.

20            THE COURT:  Okay.  Sure, you can approach.  I think

21   I have it here.

22            MR. HICKS:  We already limited this request to

23   Weyerhaeuser employees and former employees related to

24   offgassing from Gen 4, so that kind of handles what he's

25   talking about.
```

12

```
 1            THE COURT:  Okay.
 2            MR. HICKS:  And we're not out seeking depositions
 3    of plaintiffs with all of their personal information or any
 4    of that.  His proposal here that they just pick -- for
 5    example, I fly to Seattle today, taking a deposition of a guy
 6    named Ross Theilen (ph), taking a guy named Glen Boone (ph),
 7    Frank Serigini (ph) the next week, I believe these are all
 8    people that they've been deposed.  This idea that they just
 9    cherrypicked the deposition they want to give me and say, oh,
10    here is the worst one for you.
11            THE COURT:  You don't need to argue that point.
12            MR. HICKS:  Okay.  And I agree, obviously these are
13    relevant.  The distinction between a homebuilder or a
14    contractor and an employee, whatever any of this OSHA is,
15    doesn't matter or doesn't affect whether or not these
16    products were defective and these depositions are about the
17    mechanism of the defect.  Instead of design defect, is it a
18    manufacturing defect, how are they designed, where did it go
19    wrong?  These all go to the very -- the basic underpinnings
20    of the case.
21            Some of these homeowners I understand never even
22    lived in the houses.  They were claiming exposure from going
23    out visiting during framing.  This product wasn't even on the
24    market for a total of nine months.  So as you can see, our
25    clients have been in and out of these houses six or seven
```

1   months.  Some of these homeowners were in there six weeks, a

2   month, but the point is, they were all affected by the same

3   mechanism of formaldehyde offgassing.  These depositions are

4   obviously, I think as the Court recognized, relevant to the

5   question of same product, same alleged defect, same admitted

6   defect of offgassing, same mechanism of defect, same

7   mechanism of injury, same symptoms, everything else there.

8           As far as any burden on them to produce them, I

9   think they could go back to the office and say, Send it out.

10  In the Chi case, for example, there was a case here in

11  Colorado I understand there were depositions taken.  I

12  deposed a guy last week, he told me he was deposed in another

13  case that I believe was here in Colorado.

14          There is nothing, you know, in these cases that

15  requires them to go back in and decide what's relevant and

16  decide what I get to see or not get to see.

17          The question of the protective orders I think is

18  very simple.  I mean, we offered from the get-go, we'll abide

19  by any protective orders.  Now, there is a protective order

20  in this case and my understanding is there is protective

21  orders in the cases where these depositions were taken.

22          The first offer was, we'll give you the depositions

23  if you agree not to depose the people we give you a

24  deposition for.  I mean, I can't agree to that sight unseen.

25  Another offer was, you could have them if you agree not to

1   impeach or cross-examine with them, you know, things like

2   that.

3           The question of protective order, which I didn't

4   see raised explicitly in their objection, which is there, is

5   easily handled by the protective order in this case.  The

6   protective order in this case was based on one that was

7   entered in another case here called -- I believe the Chi case

8   was one of them.  They sent me the draft protective order of

9   that.  We made a couple of changes, I made a couple changes

10  about the definition of propriety information.  I made a

11  change that they couldn't blanket designate an entire

12  deposition as confidential from the get-go maybe, but the

13  operative conditions about what can be designated

14  confidential, as well as Attorney's Eyes Only, and who can

15  see it, are the same throughout all the Weyerhaeuser cases.

16  And so --

17          THE COURT:  Except here is what my concern is, and

18  this maybe something that you all need to work out after you

19  hear my order.  Let's say that there is a case in the Middle

20  District of Pennsylvania with a protective order in it that

21  says anything marked Attorney's Eyes Only may only be viewed

22  by the attorneys on that case.  I don't think defendant can

23  disclose that to you without violating the protective order

24  in that case.

25          Even if you're subject to a protective order here,

15

1    that's not the same thing as being subjected to that

2    protective order in that case, and that protective order may

3    very well say defendant can only disclose it to the attorneys

4    on that case.  And so that's my concern is I can't in any way

5    modify the protective order in the Middle District of

6    Pennsylvania.

7            MR. HICKS:  Okay.

8            THE COURT:  Now, I don't know -- again, that may be

9    a limited issue.  There may be portions of these depositions

10   that they simply cannot produce without violating the

11   protective order in the Middle District of Pennsylvania and

12   they may need to go through and redact portions of that and

13   there is nothing I can do about that.

14           Perhaps they can go and seek a modification in the

15   Middle District of Pennsylvania, I don't know, but simply

16   because you're subject to my protective order here in this

17   case does not govern or alter in any way the protective order

18   that's in existence in all these other cases whatsoever.

19           MR. HICKS:  Well, I think, Judge, I think I might

20   distinguish that this way in that if there were a plaintiff

21   or some third party in the Middle District of Pennsylvania

22   who said, I don't want this stuff going out and maybe going

23   to assert some objection that way, that might be one issue.

24           This is Weyerhaeuser who has a document trying to

25   assert a protective order saying, I don't have to give this

1    to you in this case.  They already have it in their hands.

2    They have it in their hands in this case.  These protective

3    orders -- as I recall, there is an exception for being

4    compelled by the Court to produce a document.  There is a

5    whole list of people to whom any of these documents can be

6    given to.

7                THE COURT:  And it may be -- and like I said, this

8    may be something that you all need to go through once you

9    hear my order and figure out does my order create an

10   exception to the protective order, does -- you know, is there

11   an exception that applies.  And I'm not going to address that

12   today --

13               MR. HICKS:  Sure.

14               THE COURT:  -- because I don't have -- I don't have

15   the protective orders and I don't have the depositions.

16               MR. HICKS:  Right.  And I get -- Your Honor, and I

17   know we've -- I've looked at this issue somewhat.  I believe

18   the Court does have the power to order the production of

19   these depositions and I would be happy to look at that and

20   brief that.

21               Certainly whatever they have right now in their

22   possession, let's say they have these depositions from the

23   Chi case here in Denver and they have this deposition of Glen

24   Boone, they can produce in this case, designate it

25   confidential.  They don't have to redact it, there is no

1    burden or anything.  I can't do anything else with it but

2    read it at this point.  I know that, you know, if they wanted

3    to designate it Eyes Only, that means I couldn't even -- you

4    know, I can't show it to my climate.

5            So the fact that these are out there and there

6    might be this other order doesn't change the fact at the end

7    of the day or the analysis that they are discoverable.  And I

8    know I haven't had time to cite it today as it is brought up

9    today, but there are cases where courts have said, look, for

10   the purposes of efficiency and discovery and relevance, the

11   Court can order documents produced pursuant to the requesting

12   parties' consent to abide by any of those protective orders.

13           And one of the main reasons for that is because

14   there is no harm now to Weyerhaeuser.  Weyerhaeuser is the

15   one asserting the protective order.  They said, We don't want

16   you to have it, it's confidential.  Fine, it's confidential,

17   it's not going anywhere.  There is no harm now to the party

18   asserting it in this case.  All it is is relevant

19   information.

20           THE COURT:  Okay.  Here is what I'm going to do.

21   As I indicated during my questioning, I think --

22           MR. SUTTON:  Excuse me, Your Honor, would you like

23   any comment on that or I'm happy to.

24           THE COURT:  I'll allow you a brief comment on it.

25           MR. SUTTON:  Counsel argues essentially one hand

18

1     clapping.  The protective orders were entered by both

2     parties, I think, and both parties have a right to protect

3     the information in the depositions and I think Your Honor has

4     (inaudible).  Thank you, sir.

5             THE COURT:  Sure.  Here is what I'm going to do.  I

6     think that, as I indicated during my questioning, that these

7     depositions are clearly relevant.  The depositions are of

8     employees and/or experts who have testified about the issues

9     raised in this case involving formaldehyde offgassing from

10    Gen 4 joists.  The request is limited to Gen 4 joists so

11    defendant's concerns that these get into earlier generations

12    or things that are getting far astray from the Gen 4 joist is

13    dealt with by the request itself, which limits it to Gen 4

14    joists.

15            Defendant's argument that this is not relevant

16    because it is material, that it was depositions that involved

17    homeowners as opposed to workers, I don't find particularly

18    persuasive.  As I indicated, there may certainly be

19    differences between the exposure to a homeowner who is living

20    in the home and exposed continuously in the home versus a

21    worker who in the case of an inspector may have only been in

22    the home briefly, in the case of other workers may have been

23    in the home for a longer period of time, but not to the same

24    level and same exposure as a homeowner.

25            Nonetheless, as plaintiff indicates, the testimony

1    involves defects in the product, and I believe that the

2    balancing test of whether or not the relevancy of this

3    overcomes any potential prejudice at trial is an issue for

4    Judge Domenico in a 401 analysis and not an issue for me in a

5    discovery analysis.  So I find that the depositions are

6    clearly relevant.

7           I further find that the request to limit it to one

8    deposition per employee is likewise not persuasive.  That

9    essentially creates an incentive on defendants to produce the

10   deposition that provided the least amount of information or

11   was the most ineffective of the depositions that were taken,

12   which undercuts the idea of relevancy.  It essentially

13   encourages the defendant to find the least relevant

14   deposition and turn that one over.

15          Balancing against the relevancy, I have to analyze

16   the cost of producing these, but as I indicated, the

17   defendants have failed to really argue that there is

18   significant cost in producing these.

19          Now, there may have to be some redactions that take

20   place, there may have to be some consent from other parties

21   that are obtained in this, but there has been no argument

22   that that is unduly burdensome, which is what the test for

23   Rule 1 is.  So, therefore, I will order that the depositions

24   requested in Request for Production Number 11 be produced.

25          Now, with respect to the other protective orders, I

1     am ordering that these documents be produced.  To the extent

2     the other protective orders have an exception in them that

3     says that they can be produced pursuant to Court order, that

4     exception would appear to apply and they can be simply

5     produced.

6                What I cannot do, as I said to the parties, is

7     modify the protective order in the other cases or order the

8     defendants to violate the protective order in the other

9     cases.

10                So to the extent that there is no exception in

11    those other protective orders that would seem to cover this

12    situation, then I'm not making any ruling on whether -- on

13    what defendants and plaintiff need to do in that situation.

14    I want you all to go through the protective orders, see what

15    can and what cannot be produced, and if a redaction is deemed

16    necessary to comply with the other protective orders, there

17    may be portions of this that need to be redacted, but I don't

18    have that other protective orders in front of me and I don't

19    have the depositions in front of me so I can't rule on that

20    issue in a vacuum.

21                With respect to defendant's request that plaintiff

22    not use the deposition transcripts for cross-examination,

23    impeachment or any other purpose at trial, I am not going to

24    impose that limitation.  Again, that will be up to Judge

25    Domenico to determine what should come in and what should not

1    come in at trial.

2           So that -- and obviously to the extent that

3    material is produced in those other cases that was under the

4    the protective order in those other cases, the plaintiff

5    shall likewise be bound by the same level of protection in

6    those.  So if it's under Attorney's Eyes Only, it can

7    produced in this case as Attorney's Eyes Only.  If it's under

8    a confidentiality, it can be produced in this case under a

9    confidentiality provision.

10          Is there anything further we can do with respect to

11   this issue?

12          MR. HICKS:  Yeah, I think so, Your Honor, just as a

13   practical matter now going forward.  In order for us to look

14   at the protective orders in other cases where depos have been

15   taken, I don't know how many have been taken and in which

16   cases, if they could provide a list of the individuals

17   responsive, who have been deposed, and then sent us the

18   corresponding protective order so we can have a look at them.

19   That would be the best way for us to tackle --

20          THE COURT:  Well, no, I think the best way is, what

21   I want them to do is to produce the depositions.  To the

22   extent they withhold any depositions because they believe

23   that they can't produce it or redact any depositions, to the

24   extent they believe they can't produce it, then they can

25   identify which case it is.  You should be able to pull up the

1    protective order through CMECF in those cases.  If you can't,

2    then they can turn over the protective order.  But then if

3    you have a dispute as to whether it can be produced or

4    whether it can't be produced, you can come before me or you

5    may need to go before the Court.  Again, the example I used

6    was the Middle District of Pennsylvania.  It may need to be

7    determined by that judge as to what the scope of that judge's

8    protective order is.

9         MR. HICKS:  Okay.

10        THE COURT:  But again, hopefully this is a limited

11   number of cases.  I don't know what the protective orders in

12   those cases are, so I just don't know the answer to that; but

13   I'll give it to defendant's discretion first to determine

14   whether or not they believe they can produce these.  And it

15   may be that we don't have an issue.  I just -- I don't know

16   because I don't have those protective orders.

17        MR. HICKS:  Understood.  And so I think, Your

18   Honor, just so I understand, they'll respond with a list of

19   here is depositions we're giving you, here is ones we're

20   withholding pursuant protective order and then I'll go

21   forward with protective --

22        THE COURT:  All I need them to do, produce the

23   depositions pursuant to this order.  If there is any they're

24   withholding or redacting based upon a protective order,

25   provide you that list of what they're withholding or

23

1    redacting.

2              MR. HICKS:  Okay.

3              THE COURT:  Almost like a privilege log.

4              MR. HICKS:  And could we get -- I know we're kind

5    of now getting into this and so time is somewhat pressing in

6    that these would be nice to know whether we're having any or

7    not before some of these same individuals are deposed.  Can

8    we get this in a few days?  Can we get this in a week?

9              THE COURT:  How quickly -- how quickly can you turn

10   this over?

11             MR. SUTTON:  We have -- we recently renegotiated

12   the schedules on many of these depositions and we can do that

13   again if we have -- we have a little bit of time.  I don't

14   know off the top of my head, Your Honor, what the -- what the

15   turnaround time would be on that.

16             THE COURT:  Why don't I give you -- why don't I

17   give you three weeks, which would be July 8.

18             MR. SUTTON:  July 8 you said?

19             THE COURT:  July 8.

20             MR. SUTTON:  Thank you, sir.

21             THE COURT:  So that's three weeks.  I think that's

22   sufficient time to produce them.  If I'm wrong on that, you

23   all can come back to the Court.  And if you all agree, you

24   don't even need to come back to me.  Just agree that you can

25   produce them later.  If there is a dispute on that, then, you

24

1   know, come back to me, okay.

2          MR. HICKS:  Okay.

3          THE COURT:  And I know I may be seeing you all

4   again on some of these other disputes that are raised, but I

5   want you to confer first, see if you can reach agreement.

6   And if you can't, contact my Chambers and we'll get that

7   scheduled at a time when I'm not on criminal duty, okay.

8          MR. SUTTON:  And what was the direction of that,

9   sir?

10         THE COURT:  I'm on criminal duty -- this is my last

11   week on criminal duty.

12         MR. SUTTON:  This is the last week.

13         THE COURT:  So I can get you back in --

14   unfortunately, the week before criminal duty and the week

15   after criminal duty get really ugly because I don't like

16   scheduling civil during criminal duty because, like I said,

17   the marshals bring people in and out and I don't want to make

18   their lives more difficult, and I've got warrants coming in

19   all the time, and so I try not to schedule civil then.

20         So if you were trying to get in next week, my guess

21   is it may get ugly, but -- but we might be able to make it

22   juggle, but I'm off criminal duty this week so I could get

23   you in, you know, in the next week or two after that.  All

24   right.  Thank you, everybody, we'll be in recess.

25         MR. SUTTON:  Thank you, Your Honor.

25

1          MR. HICKS:  Thank you, Your Honor.

2               (Whereupon, the within hearing was then in

3     conclusion at 9:51 a.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

```
1                    TRANSCRIBER'S CERTIFICATION
2     I certify that the foregoing is a correct transcript to the
3     best of my ability to hear and understand the audio recording
4     and based on the quality of the audio recording from the
5     above-entitled matter.
6
7     /s/ Dyann Labo                    June 25, 2019
8     Signature of Transcriber                Date
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```